1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 23, 2024

SEAN F. McAVOY, CLERK

4

5            UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7   MYLA KURTZ, Individually and On        No. 4:19-cv-05049-MKD
    Behalf of All Others Similarly Situated,

8                                          ORDER GRANTING IN PART
             Plaintiff,                    PLAINTIFF'S UNOPPOSED
9                                          MOTION FOR APPROVAL OF
                                           ATTORNEYS' FEES AND COSTS,
    v.
10
                                           GRANTING PLAINTIFF'S
    RHHC TRIOS HEALTH, LLC, et al.,        UNOPPOSED MOTION FOR FINAL
11                                         APPROVAL OF CLASS AND
             Defendants.                   COLLECTIVE ACTION
12                                         SETTLEMENT,

13                                         AND

14                                         FINAL APPROVAL ORDER AND
15                                         JUDGMENT

16                                         **ECF Nos. 261, 265**

17          Before the Court are Plaintiff's Unopposed Motions for Approval of

18   Attorneys' Fees and Costs, ECF No. 261, and for Final Approval of Class and

19   Collective Action Settlement, ECF No. 265.  On August 12, 2024, the Court held a

20   hearing on the motions.  ECF No. 285.  Ori Edelstein and Beth Terrell appeared on

ORDER - 1

behalf of Plaintiff and as Class Counsel.  Flynne Dowdy and Sheehan Sullivan appeared on behalf of Defendants.

For the reasons stated herein and at the Final Approval Hearing, the Court grants in part Plaintiff's Motion for Approval of Attorneys' Fees and Costs, grants Plaintiff's Motion for Final Approval of Class and Collective Action Settlement, and approves the parties' settlement.

## BACKGROUND

Plaintiff's First Amended Complaint alleges that Defendants, businesses that operate hospital facilities in Washington, violated the Fair Labor Standards Act ("FLSA") and Washington wage law.  *See* ECF No. 154.  Plaintiff's FLSA claims are brought on behalf of a collective of similarly situated workers pursuant to 29 U.S.C. §§ 207, 216(b), and 255(a); and Plaintiff's Washington law claims[1] are brought on behalf of a class pursuant to Fed. R. Civ. P. 23.  ECF No. 154 at 4-6, 10-25; ECF No. 265 at 14-15.

On May 10, 2023, and June 8, 2023, the parties engaged in mediation to resolve this case and a parallel Oregon case, *Kelley v. Willamette Valley Medical Center, LLC*, No. 20-CV-2196 (D. Or. filed Dec. 17, 2020).  ECF No. 261 at 6-7.

---

[1] Specifically, Plaintiff's Washington-law claims are based on RCW 49.46.130; RCW 49.12.020 and WAC 296-126-092; RCW 49.46.090; RCW 49.48.010; RCW 49.52.050; and RCW ch. 19.86.  ECF No. 154 at 20-25.

ORDER - 2

The parties reached a global settlement of all claims, amounting to $7,300,000.00, with $4,400,000.00 allocated to this case.  *Id.* at 8-9.

On December 19, 2023, the Court issued an order preliminarily approving the proposed class and collective settlement.  ECF No. 258.  The Court set a Final Approval Hearing for April 26, 2024, at 10:00 a.m. in Richland, Washington.  *Id.* at 6.  On February 6, 2024, Phoenix Settlement Administrators ("Phoenix") mailed notice of the settlement and April 26 hearing to the class.  ECF No. 268 at 3, 7.

On March 11, 2024, the parties jointly moved to continue the Final Approval Hearing because notices were not sent to appropriate federal and state officials in accordance with 28 U.S.C. § 1715.  ECF No. 263.  Notices were sent that day, and the Court continued the hearing to June 10, 2024, at 1:30 p.m., in Richland, Washington.  ECF No. 263 at 2; ECF No. 264.

The parties delayed informing class members of the updated hearing date and time until May 14, 2024, and did not send emails until May 15, 2024.  ECF No. 272 at 3-4.  On June 5, 2024, the parties again jointly moved to continue the Final Approval Hearing, this time because the parties errantly told the class that the hearing would be in Spokane, rather than Richland.  ECF No. 272 at 4.  The parties had also errantly told the class the hearing would be at 10:00 a.m., rather than 1:30 p.m.  ECF No. 278 at 2-3 (comparing ECF No. 258 at 10 with ECF No. 268 at 7).  The Court continued the hearing to August 12, 2024, at 9:00 a.m., in Richland,

ORDER - 3

Washington.  ECF No. 278.  On June 21, 2024, Phoenix sent a supplemental notice to the class that included the correct hearing date, time, and location.  ECF No. 284 at 2, 4.

On August 12, 2024, the Court held the Final Approval Hearing.  There are no objections and the case is ready for resolution.  *See* ECF No. 284.

## DISCUSSION

### A. The Settlement

Pursuant to the Settlement Agreement, Defendants agreed to pay a total amount of $4,400,000 ("Gross Settlement Amount").  ECF No. 252-1 at 33.  This amount covers all contemplated payments, excluding any employer payroll taxes for the portion of recovery allocated as wages, which Defendants shall pay separately.  *Id.*  The Net Settlement Fund represents the Gross Settlement Amount minus payments to (1) Plaintiff as the Class Representative, up to $15,000; (2) the Settlement Administrator, up to $24,000, and (3) Class Counsel, up to $1,466,666.67 for fees and $32,000 in costs.  *Id.* at 33-34.  These deductions are subject to court approval and any remaining amounts leftover, should the court approve less than the sought-after award, will be retained in the Net Settlement Fund.  *Id.*

The Settlement Agreement resolves the claims of the "Class" and the "Collective."  The Class is defined as

1
2
3
4
5

> all current and former hourly, non-exempt employees
> employed by Defendants RCCH Trios Health, LLC,
> RCCH Trios Physicians, LLC, and Lourdes Hospital,
> LLC in Washington, from April 3, 2016, through
> September 6, 2023, and by Columbia Capital Medical
> Center, LP from April 3, 2016 to March 31, 2021, in
> Washington in one or more of the job classifications [in
> a table of specific job codes listed in the Settlement
> Agreement].

6
7
8

*Id.* at 27 (referencing table at 27-29).[2]  "Participating Class Members" are Class Members who have not requested to be excluded.  *Id.* at 31.  The "FLSA Collective" or just "Collective" is defined as

9
10
11
12

> all current and former hourly, non-exempt employees
> employed by Defendants in Washington in one or more
> of the job classifications listed in [the same table] at any
> time during the FLSA Collective Period, who filed
> Consents to Join this Action on or before September 6,
> 2023.

13
14
15
16

*Id.* (referencing the table at 27-29).  "Opt-In Plaintiffs" are individuals who have submitted consent forms to join the Collective.  ECF No. 252-1 at 31.  For the purposes of this order, the "Class" refers to all class members who have not sought exclusion and whose claims are released by the Settlement Agreement.  The

17
18
19
20

---

[2] The Settlement Agreement provides a narrower definition for the Class, based upon specific job codes, than is described in the First Amended Complaint.  ECF No. 154 at 5.

ORDER - 5

"Collective" refers to valid members of the FLSA Collective who have filed a consent form and whose claims are released by the Settlement Agreement.

The Class and Collective are to be paid according to "Settlement Share" calculations made by the Settlement Administrator. *Id.* at 34.  The Net Settlement Fund will be divided *pro rata* based on the number of weeks worked by each Class and Collective member. *Id.* at 35.  For each week worked during the relevant time, each Class member will receive four settlement shares and each Collective member will receive five settlement shares. *Id.*  When those numbers are obtained, the Net Settlement Fund will be divided per every share claimed and Class and Collective members will be paid for the shares they are owed. *Id.*  One-fourth of each share is designed as the wage portion, and three-fourths is designated for interest, liquidated damages, exemplary damages, and penalties. *Id.*

The Settlement Administrator (Phoenix) will distribute funds and resolve disputes related to workweek calculations. *Id.* at 36, 39-40.  If, after distribution, there are uncashed settlement checks for an amount of $50,000 or more, there will be a second distribution. *Id.* at 43.  If uncashed settlement checks amount to less than $50,000, those funds will be distributed to *cy pres* recipients Working Washington and the Legal Foundation of Washington. *Id.* at 43.

In return, the Class agrees to release any state law wage claims against Defendants arising from April 6, 2016, through the preliminary approval date

(December 19, 2023). *Id.* at 85. The Collective agrees to release any FLSA wage claims against Defendants, from three years before the date they filed the opt-in form through the preliminary approval date. *Id.* The preliminary approval date is December 19, 2023. *See id.*; ECF No. 258.

In addition to the above major terms, the Settlement Agreement provides procedures related to notice, motions practice, among other terms. *See generally* ECF No. 252-1.

**B. Unopposed Motion for Final Approval of Class and Collective Action Settlement**

Plaintiff seeks approval of the Settlement Agreement, which will extinguish the claims of the Class and Collective. ECF No. 265 at 10.

Broadly, district courts do not involve themselves with the approval of settlement agreements unless mandated to do so by rule or statute. *See Evans v. Centurion Managed Care of Ariz. LLC*, 686 F. Supp. 3d 880, 881-82 (D. Ariz. 2023) (citations omitted). "The dismissal power under [Fed. R. Civ. P.] 41(a)(1)(A) is subject to Rules 23(e) . . . any applicable federal statute[]." *See Id.* at 882 (quotation marks omitted).

In an unpublished and therefore non-binding decision, the Ninth Circuit endorsed out-of-jurisdiction authority to find that "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (citing *Nall v. Mal-*

ORDER - 7

*Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)).  In *Evans v. Centurion Managed Care of Ariz. LLC*, the District of Arizona outlined a circuit split on this issue.  686 F. Supp. 3d at 882-83 (collecting cases).  Yet, even after *Seminiano*, some district courts of this circuit, including the *Evans* court, have found no requirement for court-approval of FLSA settlements.  *See Evans*, 686 F. Supp. 3d at 884; *Rainford v. Freedom Fin. Network LLC*, No. CV-22-2014, 2024 WL 2942715, at *1-2 (D. Ariz. June 11, 2024); *Kennedy v. El Centro Reg'l Med. Ctr.*, No. 22-CV-1522, 2024 WL 1361838, at *4 (S.D. Cal. Mar. 29, 2024).  Others have found the opposite.  *See Chery v. Tegria Holdings LLC*, No. C23-612, 2024 WL 3730981, at *2 (W.D. Wash. July 31, 2024) (citing *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018)); *Reed v. Bridge Diagnostics, LLC*, No. 21-cv-1409, 2023 WL 4833461, at *4 (C.D. Cal. July 27, 2023) (citing *Seminiano*, 602 F. App'x at 683).

Although recognizing that court approval may not be required, the Court will continue to the approval inquiry because Plaintiff requests it; regardless, the Court ultimately finds no issue with the settlement.

In contrast, Fed. R. Civ. P. 23 and 41 are clear that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."

ORDER - 8

The Settlement Agreement is approved under each standard.

### 1. *FLSA Collective*

The Ninth Circuit has not provided specific guidance on the process of approving settlement of FLSA claims, but courts in this circuit that have engaged in the inquiry consider "first consider whether certification is appropriate and then whether the proposed settlement is substantively acceptable." *Reed*, 2023 WL 4833461, at *3 (quoting *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-660, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016) (citations omitted). For the following reasons, the Court approves settlement of the FLSA Collective's claims.

#### a. Certification is Appropriate

Certification is appropriate where the plaintiffs are similarly situated. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109-10 (9th Cir. 2018)). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

The Collective is comprised of individuals that were each subject to the same pay practices that form the basis of their claims. *See* ECF No. 154 at 10-13; ECF No. 252-1 at 31. The law underlying their claims is the same. *See* ECF No. 154 at 10-13. A merits analysis of any individual claim would be substantively

ORDER - 9

identical to the others, involving comparison of hours worked and pay received.

*Id.*  The Collective is similarly situated.

###    b.  Settlement is Substantively Acceptable

Turning to whether the settlement is substantively acceptable, district courts

require that the "settlement is a fair and reasonable resolution of a bona fide

dispute."  *Chery*, 2024 WL 3730981, at *2 (quoting *Cavazos v. Salas Concrete*

*Inc.*, No. 19-CV-62, 2022 WL 506005, at *5 (E.D. Cal. Feb. 18, 2022)).  "A bona

fide dispute exists when there are legitimate questions about the existence and

extent of Defendant's FLSA liability."  *Selk v. Pioneers Mem'l Healthcare Dist.*,

159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citation and quotation marks

omitted).  Whether a settlement is fair and reasonable depends on

> (1) the plaintiff's range of possible recovery;
> (2) the stage of proceedings and amount of discovery completed;
> (3) the seriousness of the litigation risks faced by the parties;
> (4) the scope of any release provision in the settlement agreement;
> (5) the experience and views of counsel and the opinion of participating plaintiffs; and
> (6) the possibility of fraud or collusion.

*Id.* at 1173.  These factors are premised upon the similar analysis undertaken in the

Fed. R. Civ. P. 23(e) context.  *Id.*  In addition, a district court must give "due

weight to the policy purposes behind the FLSA."  *Id.* at 1172.

ORDER - 10

This case represents a bona fide dispute.  The First Amended Complaint alleges that Defendants' payroll policy automatically deducted thirty minutes from their hourly workers' daily time for a meal period.  ECF No. 154 at 7 ¶ 30.  As alleged, this policy was enforced irrespective of whether those workers could take a bona fide meal break.  *Id.*  Those workers, nurses, were often on duty or on call throughout the day and lost a half-hour's pay without a genuine opportunity to take a lunch break.  *Id.* at 7 ¶¶ 30-32.  Plaintiff alleges she was required to work while off-the-clock without compensation and worked overtime hours without overtime pay.  *Id.* at 7-10 ¶¶ 33-46.  Plaintiff alleges that Defendants failed to comply with the FLSA knowingly and willfully.  *Id.* at 3 ¶ 4, 19 ¶ 94.  Defendants deny these allegations.  *See, e.g.,* ECF Nos. 169, 170, 189, 197.  Given the many factual and legal disputes presented, the Court finds a bona fide dispute.  *See Selk*, 159 F. Supp. 3d at 1172.

Turning to the fair and reasonable analysis, the Fed. R. Civ. P. 23(e) factors are similar in principle and practice.  *See id.* at 1172-73 ("In making this determination, many courts begin with the well-established criteria for assessing whether a class action settlement is 'fair, reasonable, adequate' under Fed. R. Civ. P. 23(e)[.]") (citations omitted).

The Class's claims are largely identical to the Collective's although arising from state wage law.  *See* ECF No. 154.  The Settlement Agreement largely treats

ORDER - 11

them the same; the only substantive difference is that the Settlement Agreement

favors the Collective's claims with one extra share per week worked.[3]   ECF No.

252-1 at 35.  Therefore, the Court defers the fair and reasonable analysis factors to

the below discussion of Fed. R. Civ. P. 23(e).  *See* discussion Section B.2.  In

short, the Settlement Agreement presents a resolution of a bona fide dispute.

Finally, the Court turns to the policy purposes of the FLSA.  *See Selk*, 159 F.

Supp. 3d at 1173.  "The FLSA was enacted to protect covered workers from

substandard wages and oppressive working hours."  *Id.* at 1171 (citing *Barrentine*

*v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)).  The Defendants'

alleged auto-deduct policy, if proven, would undoubtedly offend the FLSA's

policy purposes.  *See* ECF No. 154.  Plaintiff's motion does not indicate whether

the policy has changed.  *See* ECF No. 265.  At the Final Approval Hearing, counsel

for Plaintiff indicated that the policy had changed.  Further, the wage payout from

the Net Settlement Fund, while not fully compensating for the alleged total number

of lost hours of work, represents a fair amount in light of the difficulties that would

arise in litigating this case through trial.  The total amount is significant and

---

[3] The discrepancy is fair and reasonable, given that the Collective members filed an

opt-in form and the Class members did not, and if this case had gone forward the

Collective's claims would have required some additional litigation rooted in the

FLSA beyond the state law claims.

ORDER - 12

includes liquidated damages, exemplary damages, and penalties, *see* ECF No. 252-1 at 35, which should deter employers from violating the FLSA in the future.  The Court finds that the Settlement Agreement serves the policy purposes of the FLSA.

       2. *Class Action*

         a.  Procedure

       The Court previously approved notice to the Class, finding that the Class met the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).  ECF No. 258 at 3.  Despite some initial errors, *see* ECF No. 263 at 2; ECF No. 272 at 3-4, the parties have satisfied the notice requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  *See* ECF No. 281 at 6-7.  The notice is compliant with CAFA.  ECF No. 282; *see* 28 U.S.C. § 1715.

       The Court preliminarily approved the settlement pursuant to Fed. R. Civ. P. 23(e)(1)(B).  After issues related to notice to the Class came to light, those issues were addressed.  *See* ECF No. 278.  The parties effectuated notice in accordance with the Court's orders.  *See* ECF Nos. 268, 284.  Notice was the best practicable under the circumstances and given in a reasonable manner to all Class members that will be bound by the settlement.  *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1).

       The Court held a Final Approval Hearing.  ECF No. 285.  The Class was notified of their opportunity to object and to appear at the hearing.  Fed. R. Civ. P. 23(e)(5).

ORDER - 13

1    The procedural requirements of class settlement approval are satisfied.

2    　　b.  Fair, Reasonable, and Adequate

3    Where a settlement proposal would bind class members, "the court may

4    approve it . . . only on finding that it is fair, reasonable, and adequate[.]"  Fed. R.

5    Civ. P. 23(e)(2); *see also Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir.

6    2021).  The court must consider whether:

7    　　　　(A) the class representatives and class counsel have
       　　　adequately represented the class;

8

9    　　　　(B) the proposal was negotiated at arm's length;

       　　　(C) the relief provided for the class is adequate, taking
10   　　　into account:

11   　　　　　(i) the costs, risks, and delay of trial and appeal;

12   　　　　　(ii) the effectiveness of any proposed method of
       　　　　distributing relief to the class, including the
13   　　　　method of processing class-member claims;

14   　　　　　(iii) the terms of any proposed award of attorney's
       　　　　fees, including timing of payment; and

15
       　　　　(iv) any agreement required to be identified under
16   　　　　Rule 23(e)(3); and

17   　　　　(D) the proposal treats class members equitably relative
       　　　to each other.

18   Fed. R. Civ. P. 23(e)(2).

19   　　In addition, district courts should consider the strength of the plaintiffs' case,

20   the extent of discovery completed, the stage of the proceedings, the experience and

ORDER - 14

views of counsel, the presence of a governmental participant, and the reaction of

the class members to the proposed settlement.  *See Campbell v. Facebook, Inc.*,

951 F.3d 1106, 1121 (9th Cir. 2020) (citation omitted).[4]

       i.   Adequate Representation

Myla Kurtz, the named Plaintiff, has expended time assisting in the case, is

representative of the Class, and participated in discovery.  ECF No. 265-1.  As

represented by Class Counsel and herself, she has no conflicts with the Class, and

_____

[4] This list of additional factors is rooted in case law that predates the 2018

amendments to Fed. R. Civ. P. 23(e), which set forth specific factors.  *See Briseño*,

998 F.3d at 1023-24.  Nevertheless, courts continue to apply them.  *See, e.g., id.*;

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *Peterson v. BSH Home*

*Appliances Corp.*, No. 23-cv-543, 2024 U.S. Dist. LEXIS 105624, at *10-11 (W.D.

Wash. June 13, 2024); *Mills v. Target Corp.*, No. EDCV 20-1460, 2024 U.S. Dist.

LEXIS 121210, at *4, *14-15 (C.D. Cal. July 8, 2024) (citing *Staton v. Boeing Co.*,

327 F.3d 938, 959 (9th Cir. 2003)).  The factors are non-exhaustive, settlement

approvals are a matter of district court discretion, and district courts may consider

some or all of the factors.  *Campbell*, 951 F.3d at 1121; *see also Mills*, 2024 U.S.

Dist. LEXIS 121210, at 14-15.  The Court's list of additional factors excludes

factors already represented in Fed. R. Civ. P. 23(e).

ORDER - 15

her claims are in line with those of the Class.  ECF No. 252-1 at 18 ¶ 47; ECF No. 265-1 at 2 ¶ 4.

Class Counsel is experienced in prosecuting class actions, has no conflicts with the Class, and prosecuted the case vigorously and fairly on behalf of the Class.  *See* ECF No 261-1.

This factor weighs in favor of final approval of the settlement.

### ii.    Arm's Length Negotiation

The mediation took place over the course of two days with Lou Peterson, a respected mediator of wage and hour class actions.  ECF No. 261-1 at 14 ¶ 19. This case was mediated alongside parallel litigation *Kelley*.  *Id.*  There is no indication of collusion or that the Settlement Agreement was the product of anything other than arm's length negotiation.

This factor weighs in favor of final approval of settlement.

### iii.    Relief is Adequate

The Net Settlement Fund is significant and will be paid out in a manner tailored to compensate each Class member according to their individual damages. *See* ECF No. 252-1 at 34-35.  It accounts for lost wages as well as other statutory damages.  *See id.*  Class Counsel represents that the Gross Settlement Amount is about 9.7% of their initial estimate of Defendants' total potential exposure.  ECF No. 252 at 24-25.

ORDER - 16

1    Overall and in consideration of the following factors, the adequacy of the

2    relief weighs in favor of approval of the settlement.

3         iv.    Costs, Risks, and Delay of Trial and Appeal

4    As Class Counsel explains, the Class's challenge in further litigation is

5    proving time worked that was not recorded.  ECF No. 265 at 24-25.  The Class

6    claims involve unpaid and unrecorded work hours dating back to 2016.  *Id.* at 14-

7    15.  The claims would involve different departments and different supervisors in

8    different hospitals.  *Id.* at 14, 24.  Further litigation would likely mean contested

9    certification proceedings, further discovery, trial, appeal proceedings, etc.  *Id.* at

10   25.  Settlement results in guaranteed recovery and an equitable end to this five-

11   year-old case.

12   This factor weighs in favor of approval of the settlement.

13        v.    Effectiveness of Method of Distributing Relief to the Class

14   The Settlement's plan to distribute Net Settlement Funds according to

15   Settlement Share is an effective plan to pay each Class member according to their

16   individual damages.  *See* ECF No. 252-1 at 34.  Use of Phoenix, a professional

17   third-party, to administer the funds is appropriate.  *See id.* at 36.

18   This factor weighs in favor of approval of the settlement.

19

20

ORDER - 17

vi.    Terms of Proposed Award of Attorney's Fees

The Settlement Agreement provides that Class Counsel will seek fees in the amount of $1,466,666.67, one-third of the Gross Settlement Amount.  ECF No. 252-1 at 34.  Class Counsel must move for court approval of their fees.  *Id.*  The Court considers Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Costs below.  ECF No. 261.

Setting aside the amount of the award, the Settlement Agreement's provisions for timing and requirement of court approval of Class Counsel's fee request weigh in favor of final approval of the settlement.

vii.    Agreements

The Settlement Agreement includes a release of claims, waiver of appeal, no admission of liability or class certification, forum selection, and various terms related to the process of distributing the funds.  ECF No. 252-1 at 42-45.

The Court has reviewed the agreements identified in the Settlement Agreement, and finds this factor weighs in favor of final approval of the settlement.

viii.    Equitable Treatment of Class Members

The Settlement Agreement discriminates between Class members only to account for their individual exposure to Defendant's allegedly unlawful pay practices.  *See* ECF No. 252-1.  As explained above, the Collective receives one

ORDER - 18

extra share per week, which is equitable due to the extraneous considerations of the FLSA claims, above what would be required for the Class claims. *Id.*

This factor weighs in favor of final approval of the settlement.

     ix.   Additional Factors

          *A. Strength of the plaintiff's case*

On the papers, Plaintiff's claims set forth fairly straightforward violations of state wage and hour law. *See generally* ECF No. 154. As counsel acknowledges, the factual issues, rather than legal issues, make their case difficult to prove. ECF No. 261-1 at 15-16.

This factor weighs in favor of final approval of the settlement.

          *B. Extent of discovery completed and stage of the proceedings*

This case went through motions practice related to dismissal for jurisdictional reasons, discovery, amending the complaint, and finding the correct defendants. *See* ECF Nos. 28, 38, 44, 94, 110, 114, 153. The parties reached a settlement before contested certification proceedings or dispositive motions, and after discovery and opportunity to develop Plaintiff's claims. ECF No. 252; ECF No. 261-1 at 13-14. The settlement has largely avoided litigation on the merits before the Court. The parties had sufficient opportunity to understand the issues of this case and make informed decisions in settlement proceedings.

This factor weighs in favor of final approval of the settlement.

ORDER - 19

1

*C. Experience and views of counsel*

2       Lead Class Counsel Schneider Wallace Cottrell Konecky ("SWCK"), and

3  local counsel Terrell Marshall Law Group ("TMLG") are experienced firms with

4  notable participation in similar cases.  ECF No. 261-1 at 3-10; ECF No. 261-2 at 2-

5  9.  Counsel represents that the results of this case are excellent and advocate for

6  final approval.  ECF No. 261-1 at 15.

7       This factor weighs in favor of final approval of the settlement.

8

*D. Presence of governmental participants*

9       There are no governmental participants in this case.  This factor does not

10  affect the Court's analysis.

11

*E. Reaction of the class members*

12       Phoenix mailed notice to 1,652 individuals, Class members returned one

13  request for exclusion and no objections.  ECF No. 268 at 3 ¶¶ 5, 8, 9; ECF No. 284

14  at 2 ¶¶ 5, 6.  At the hearing, the parties indicated that one individual has submitted

15  a dispute over weeks worked in different positions.  The individual worked in a

16  position that was initially covered in the complaint but is not included in the more

17  limited and specific list of covered positions in the Settlement Agreement.  As the

18  position is not covered, claims related to that position are not released.  The parties

19  are continuing to work through the dispute.  The Court is not concerned that the

20

ORDER - 20

dispute should preclude final approval as any rights related to non-covered positions are not affected.

This factor weighs in favor of final approval of the settlement.

### 3. Class Representative Payment

Plaintiff moves for approval of a $15,000 incentive award for her role as class representative. ECF No. 265 at 34-35. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). In 2015, the Northern District of California found that "[i]ncentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (listing example cases).

Plaintiff has performed work beneficial to the class and has served as a named plaintiff in this action for five years. ECF Nos. 252-1 at 23; ECF No. 265-1 at 2. In recognition of her effort and the risk undertaken, the Court approves the $15,000 incentive award, which is consistent with awards granted in other cases. *See, e.g.*, *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-cv-411, 2021 WL 3419232, at *7-8 (S.D. Cal. Aug. 5, 2021) (approving $15,000 incentive award).

### 4. Schedule

Counsel moves for approval of their proposed schedule. The Court has reviewed the schedule and finds the proposal adequate and directs compliance below.

### 5. Final Approval

After consideration of all the relevant factors, the Court finds that the Settlement Agreement is fair, reasonable, and adequate. Plaintiff's Unopposed Motion for Final Approval of Class and Collective Action Settlement is granted.

## C. Unopposed Motion for Approval of Attorneys' Fees and Costs

Class Counsel moves for approval of attorneys' fees and costs. ECF No. 261 at 2. The motion is made under both Fed. R. Civ. P. 23(h) and 29 U.S.C. § 216(b). *Id.* at 2 n.1. Class Counsel largely argues under Fed. R. Civ. P. 23(h). *See* ECF No. 261 at 7-26.

Whether or not the district court plays a role in approving fees and costs paid pursuant to an FLSA settlement is unsettled. *See Hoffman v. Pride Sec. LLC*, No. CV-23-1247, 2024 WL 579072, at *2 (D. Ariz. Feb. 13, 2024) (quoting *Evans*, 686 F. Supp. 3d at 883 (describing circuit split)). The statute requires only that the Court shall "*allow* a reasonable attorney's fee to be paid by the defendant," and only "in addition to any judgment awarded to the plaintiff or plaintiffs." 29 U.S.C. § 216(b) (emphasis added).

ORDER - 22

Class Counsel moves for fees and costs for representing the Class, which certainly requires court approval pursuant to Fed. R. Civ. P. 23(h).  The Class encompasses the Collective.  *See* ECF No. 154.  Even if the Court were to engage in a FLSA reasonable fee analysis, "[t]he 'case law construing what is a reasonable fee applies uniformly' to all federal fee-shifting statutes." *Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (discussing FLSA fees) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).  For fees awarded pursuant to Fed. R. Civ. P. 23(h) for state law class claims, the state law on fees applies; here, that state is Washington, whose courts "look[] to federal law for guidance in this area." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Whether awarded under the FLSA or Fed. R. Civ. P. 23(h), the inquiry would be substantively identical.

The Court proceeds under Fed. R. Civ. P. 23(h).

*1. Procedure*

In relevant part, Fed. R. Civ. P. 23(h) allows the Court to award reasonable attorney's fees and costs authorized by the parties' agreement subject to the following procedures:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets.  Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

ORDER - 23

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

. . . .

As the Court noted prior, upon re-review of the initial notice it appeared that the Class was not adequately advised of the opportunity to object to counsel's motion for fees. ECF No. 278. The Court directed supplemental notice and a renewed opportunity to object. ECF No. 278. The Court held a hearing and there are no objections. The Court is satisfied that the procedural requirements of Fed. R. Civ. P. 23(h) have been met.

    *2. Fees*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[A] court must examine whether the attorneys' fees arrangement shortchanges the class." *Briseño*, 998 F.3d at 1024.

"In awarding attorneys' fees under [Fed. R. Civ. P.] 23(h), 'courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)). "Under Washington law, the percentage-of-recovery approach is

ORDER - 24

used in calculating fees in common fund cases." *Vizcaino*, 290 F.3d at 1047 (citing

*Bowles v. Dep't of Ret. Sys.*, 847 P.2d 440, 450 (Wash. 1993)).  "Under Ninth

Circuit law, the district court has discretion in common fund cases to choose either

the percentage-of-the-fund or the lodestar method."  *Id.*  "Though courts have

discretion to choose which calculation method they use, their discretion must be

exercised so as to achieve a reasonable result."  *Bluetooth*, 654 F.3d at 942.

When applying the percentage-of-recovery approach, 25% is the

"benchmark" for a reasonable fee award."  *Id.* (citations omitted).  "While the

benchmark is not per se valid, it is a helpful 'starting point.'"  *Online DVD-Rental*,

779 F.3d at 955 (quoting *Vizcaino*, 290 F.3d at 1048).  A departure from the

benchmark may be warranted, so long as the court "provid[es] adequate

explanation in the record of any 'special circumstances' justifying a departure."

*Bluetooth*, 654 F.3d at 942 (citations omitted).  The Ninth Circuit has upheld fee

awards where the district court discussed factors warranting an upward departure

from the benchmark, including the results achieved for the class, the risk and

burden on class counsel for taking the case, benefits generated beyond the

settlement fund, the market rate for the field of law, and whether the case was

handled on a contingency basis over an extended period.  *Vizcaino*, 290 F.3d at

1048-50 (listing cases for each factor).  These factors are not exhaustive, fee

awards are a matter of discretion, and the Ninth Circuit has recognized that there

are "many factors that a court could apply." *See Online DVD-Rental*, 779 F.3d at 955. In addition, a cross-check of a percentage-of-recovery figure against a lodestar calculation may support reasonableness. *Id.* (citing *Vizcaino*, 290 F.3d at 1050).

Class Counsel moves for a fee award in the amount of $1,466,666.67, which is one-third of the Gross Settlement Amount, and approximately 8.3% over the benchmark. ECF No. 261 at 2. Class Counsel argues that the relevant factors warrant an upward adjustment. *Id.* at 8.

a. Results Achieved for the Class, Comparable Awards in Similar Cases

Class Counsel represents that the Gross Settlement Amount is an excellent recovery for the Class. ECF No. 261 at 10. Class Counsel represents that the average recovery is $2,047, and total recovery is 9.7% of initial calculations. *Id.* at 11.

In support, Class Counsel points to cases where the district court approved settlement agreements with a smaller per-member recovery figure. ECF No. 261 at 10. For example, *Rivas v. BG Retail, LLC*, where the average recovery was $170.59, representing "approximately 6.12% of Defendants' maximum potential exposure . . . with 2.4% net recovery to the class[.]" No. 16-cv-06458, 2020 WL 264401, at *5 (N.D. Cal. Jan. 16, 2020). However, the *Rivas* court ultimately approved a relatively modest total fee request of $78,750, representing about 45%

of the total recovery.  *Id.* at *8.  The court concluded that an above-benchmark

award was warranted, as the figure was 49% of the lodestar amount.  *Id.*

Counsel also offered *Perez v. CVS Health Corp.*, where "the settlement

amount of $1,850,000 represent[ed] approximately 2.5% of the class's potential

maximum recovery as estimated by plaintiff."  No. 19-cv-449, 2021 WL 2402950,

at *6 (E.D. Cal. Jun 11, 2021).  However, in that case, the court found that "a

benchmark fee award of 25% of the Gross Settlement is fair and reasonable,"

rather than the above-benchmark amount class counsel had requested.  *Id.* at *12.

Notably, "plaintiff did not address the potential value of this litigation (maximum

recovery, discounts applicable to account for defenses, etc.) at all in the motion for

final approval and motion for attorneys' fees."  *Id.* at *11.

Class Counsel cites a number of cases where the court awarded one-third of

recovery in fees, but fails to explain the context for those awards.  ECF No. 261 at

18-20.  For example, a case where one-third was awarded but the fee was a small

fraction of the lodestar figure.  *See Perkins v. Singh*, No. 19-cv-1157, 2021 WL

5085119, at *3 (D. Or. Nov. 2, 2021) (approving the request for $25,000 in

attorneys' fees, under a lodestar figure of $71,367).  One example included

injunctive relief with a "hard-to-measure" value.  *See Paredes Garcia v.

Harborstone Credit Union*, No. 21-cv-5148, 2023 WL 7412842, at *8-9 (W.D.

Wash. Nov. 9, 2023) (citations omitted).  Another involved a complex issue of

unsettled law. *See Romero v. Producers Dairy Foods, Inc.*, No. 05-cv-484, 2007 WL 3492841, at *3 (E.D. Cal. Nov. 14, 2007). Yet another included little to no analysis to provide adequate comparison to this case. *See Soto v. O.C. Commc'ns, Inc.*, No. 17-cv-251, 2019 WL 13151723, at *3 (N.D. Cal. Oct. 23, 2019).

In short, the total recovery, here, appears to exceed recovery in other cases in recovery-per-member and percentage-of-potential exposure, based upon the limited offering by counsel. However, counsel has not provided the method by which they calculated potential exposure. The Court must take counsel's evaluation of the recovery earned at face value. Given the difficulty in comparing this case to the others counsel cites, the Court limits its reliance on this factor to marginal support of an upward adjustment.

b. Risks of Litigation, Contingency Arrangement, Financial Burden

The risks of this case, as discussed above, were significant given the difficulty of proving the factual basis for the Class's claims. The initial Complaint was filed more than five years ago, in April 2019. ECF No. 1. Counsel took the case on a contingency basis, expending time and incurring expenses with no guarantee of compensation or recovery. ECF No. 261 at 16. The case carried risk and counsel prosecuted the action with sufficient energy and attention to secure a settlement. However, that settlement avoided litigation as to certification and on the merits.

The Court cannot conclude that the risk presented warrants a significant departure from the lodestar.  For example, in *Vizcaino*, the Ninth Circuit affirmed a 28% fee award, where the risk was "extreme[]."  290 F.3d at 1048.  Counsel had lost twice at the district court level and won two significant appeals, yielding benefits to "employers and workers nationwide by clarifying the law of temporary worker classification."  *Id.* at 1048-49.  This case is more comparable to *Hendricks v. Starkist Co.*, where the court awarded 30% and found "there still is nothing to suggest that the legal issues here were particularly complex compared to other large class action matters, or that exceptional skill was required to address those issues."  No. 13-cv-729, 2016 WL 5462423, at *11 (N.D. Cal. Sept. 29, 2016).  This case is also comparable to *Perez*, where the court awarded 25% and found that "counsel has not persuaded the court that th[e] risks were high or extreme compared to other similar cases."  2021 WL 2402950, at *11.

This factor does not warrant an upward departure to one-third of the Gross Settlement Amount.

c.  Benefits Generated Beyond Settlement Fund

Counsel does not indicate in the briefing what benefits were generated beyond the settlement fund.  *See* ECF No. 261.  The Court inquired about Defendants' current pay policies at the hearing, and counsel represented that the pay policies underlying this lawsuit were no longer in practice.  However, given

ORDER - 29

the lack of detail offered, this factor is of limited relevance and marginally

supports an upward departure.

### d. Skill Exhibited by Counsel and Quality of Work

In addition, courts often look to the skill exhibited by counsel and the quality

of their work. *See, e.g.*, *Bluetooth*, 654 F.3d at 941-42, 942 n.7; *Perez*, 2021 WL

2402950, at *12; *Rivas*, 2020 WL 264401, at *7 (citing *Tarlecki v. bebe Stores,*

*Inc.*, No. C05-1777, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009)); *cf. In re*

*Online DVD-Rental Antitrust Litig.*, 779 F.3d at 955 n.15.

This case was litigated before two other district judges through various

motions practice and discovery disputes before reassignment to the undersigned.

*See* ECF Nos. 38, 44, 79, 94, 110, 112, 114, 153, 173.  The Court does not doubt

the quality of the work performed in those proceedings.

However, the Court has observed a number of missteps that warrant

discussion.  The Final Approval Hearing was first delayed because Defendants did

not send notices as required by 28 U.S.C. § 1715(b).  *See* ECF Nos. 263, 264.

While the statute places responsibility for the notices upon Defendants, it would be

incumbent upon Class Counsel, who represent themselves as experts in the field, to

ensure the prerequisites of the settlement are met.

Class Counsel failed to accurately notify the Class of the dates, times, and location of the Final Approval Hearing, causing delay. *See* ECF No. 272 at 3-4; ECF No. 278 at 2-3.

Class Counsel has at various times misstated the identified number of Class and Collective members. Although these numbers were at times estimates, the inconsistencies are concerning. In preliminary approval filings, the number of Class members varied between 2,151 and 2,149. *See* ECF No. 252 at 3, 4, 6, 15, 17 (2,151 in the Class and 314 in the Collective); ECF No. 252-1 at 12, 43 (2,149 in the Class), and at 10, 43 (2,151 in the Class); ECF No. 252-3 at 2 (2,151 Class Members). In the February 16, 2024 motion for fees, counsel represented there were 2,149 Class members, although the filing was made after counsel narrowed the Class with the Settlement Agreement. ECF No. 261 at 10 n.3. The actual number was reduced to 1,652, which is the number offered in the motion for final approval. ECF No. 265 at 9, 9 n.3, 11, 20-21, 29. The reduction was not addressed until the Court called for an explanation. ECF No. 281 at 2-3.

The motion for final approval had another discrepancy, however, claiming 299 Collective members in one place, and 314 in another. ECF No. 265 at 9, 15. Counsel explains this as a simple mistake. ECF No. 281 at 3. While typos are to be expected in this profession, the reduction in the number of Class members

appeared to the Court a significant discrepancy likely warranting explanation in the first instance.

The Court was also required to call for explanation for an increased fee request from Phoenix Settlement Administrators in excess of what was preliminarily approved. ECF No. 278 at 6. The issue is resolved as it appears Defendants will cover the additional cost. *See* ECF No. 281 at 6-7. However, the Court questions whether the discrepancy would have been noticed, and whether these additional costs would have been taken from the Gross Settlement Amount, if the Court had not highlighted it.

Class Counsel represent themselves as "highly experienced counsel who focus on wage and hour class actions," in support of their request for an upward departure from the benchmark. ECF No. 261 at 15. Class Counsel is highly qualified in wage and hour cases, as evidenced by their biographical materials. *See* ECF No. 261-1 at 26-34; ECF No. 261-2. The issues the Court has observed do not cast doubt on counsel's expertise in wage and hour law or ability to litigate such cases. However, their lack of attention to detail in the late stages of this proceeding, which delayed the Class's and Collective's recovery, indicates that a substantial upward departure from the benchmark is not warranted.

e.  Lodestar Cross-Check

"One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method." *Online DVD-Rental*, 779 F.3d at 949.  "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citation omitted).  The requesting party bears the burden of submitting evidence supporting the hours worked and rates claimed.  *Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 242 (1985) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Class Counsel represents that the lodestar figure is approximately $2,065,328.  ECF No. 261-1 at 16 ¶ 27.  Class Counsel argues that this figure supports their request for one-third of the Gross Settlement Amount because $1,466,666.67 would be a negative multiplier to the lodestar figure.  ECF No. 281 at 4-6.

The Court has reviewed *in camera* counsel's billing records, which are extensive.  ECF No. 283.  Because the Court uses the lodestar method to cross-check the percentage-of-recovery analysis, the Court will not conduct a complete lodestar analysis.  *See Bluetooth*, 654 F.3d at 945 ("[E]ven though the lodestar

ORDER - 33

method may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method.").  Rather, the Court focuses on the aspect of the lodestar analysis that demonstrates one-third is not a reasonable percentage for a fee award, here: the "reasonable hourly rate."  *See id.* at 941.

Class Counsel concedes that their "hourly rates are higher than the prevailing rate in the District."  ECF No. 291 at 4.  Class Counsel does not argue that local counsel was unavailable and outside-forum rates were therefore justified.  *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 907 (9th Cir. 1995) ("[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." (quotations omitted)).

The highest rate requested for a SWCK professional is for Carolyn Cottrell, a named partner, at $1,295 an hour.  ECF No. 261-1 at 33-34.  The lowest is $150 an hour, for Yanela Mendez, a Paralegal/Law Clerk.  *Id.* at 34.  A summer law clerk bills at $400 an hour.  *Id.*  Other non-partner attorneys range from $680 to $985 an hour.  *Id.*  Paralegals and law clerks bill up to $500 per hour.  *Id.*  Comparably, TMLG, who is based out of Seattle, request attorney rates ranging

from $425 to $590 an hour and paralegal rates from $125 to $150 an hour.  ECF No. 261-2 at 11.

Setting aside non-attorney time, it appears from raw figures that the approximately 2,111.6 hours of SWCK attorney time spent on this case would be billed at an average of $815.54 an hour under a lodestar analysis.  ECF No. 281-1 (Exhibit D).  That figure, without regard to varying degrees of experience between the attorneys, far exceeds the highest rates awarded in this district in recent years where the court applied a full lodestar analysis.  *See, e.g.*, *Cmty. Ass'n for Restoration of the Env't Inc. v. DeCoster*, No. 19-CV-3110, 2023 WL 8663749, at *4 (E.D. Wash. Dec. 1, 2023) (awarding $640 an hour for an attorney with thirty-five years of experience in the relevant field, in a case requiring that required specialized experience at outside-forum rates); *O'Kell v. Haaland*, No. 18-CV-279, 2022 WL 19571657, at *2-3 (E.D. Wash. July 8, 2022) (awarding $550 an hour for an attorney with thirty-one years of experience); *Red Lion Hotels Franchising, Inc. v. Gillespie*, No. 20-CV-151, 2020 WL 6092102, at *5 (E.D. Wash. Oct. 15, 2020) (awarding $508.54 an hour for an attorney with 23 years of experience).

Class Counsel argues that, if the Court divides the fee they request, $1,466,666.67, by the total number of hours their legal professionals expended on the case, 3,053, they effectively bill at $480.40 an hour.  ECF No. 281 at 5.  That figure includes approximately one thousand hours of non-attorney time, some of

1  which is likely not compensable.  *See, e.g.*, ECF No. 283 at 4 (time billed for

2  mailing, printing, preparing envelopes, scanning), 29 (time billed for downloading,

3  saving, and sending forms), 320 (time billed for downloading and saving files); *see*

4  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("filing, transcript, and

5  document organization time [are] clerical in nature and should [be] subsumed in

6  firm overhead rather than billed at paralegal rates").  And, even by raw comparison

7  to the local cases cited above, $480.40 is on the high end for typical awards in this

8  district.

9          The final figure offered is found by adjusting SWCK's "blended hourly rate"

10  to match that of TMLG's "blended hourly rate;" SWCK's fees come to $907,011.[5]

11  ECF No. 281 at 6.  TMLG's rates are much more reasonable for this district.  *See*

12  ECF No. 261-2.  The Court, internally, has re-calculated SWCK's lodestar by

13  reducing the rates requested to reasonable local rates, and the resulting figure is

14  roughly consistent with SWCK's recalculation.  Counsel's recalculated and

15  combined lodestar figure for TMLG and SWCK is $953,975.67, which is far more

16  reasonable for this district than their starting point of $2,065,328.

17          Counsel represents that, in any event, a "modest 1.5 multiplier" is warranted

18  in this case for the purposes of the lodestar cross-check.  ECF No. 281 at 6.  After

19  ─────────────────
   [5] Class counsel reaches this figure by multiplying $312.47 by 2,902.7, which is

20  equal to $907,006.67.  The discrepancy is likely a rounding error.

ORDER - 36

conducting a lodestar analysis, the figure can be adjusted "'by an appropriate positive or negative multiplier' to account for factors such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) (quoting *Kim*, 8 F.4th at 1180-81)). $1,466,666.67 represents a 0.73 negative multiplier to Class Counsel's initial lodestar figure ($2,065,328), and a 1.54 positive multiplier to the more reasonable adjusted lodestar ($953,975.67).

In consideration of the above discussion of "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[,]" a 1.54 positive multiplier is not warranted in this case. *Apple*, 50 F.4th at 784.

### f.  Award

In conclusion, the factors that the Court must consider do not warrant an 8.3% upward adjustment from the 25% benchmark.  Counsel's request for a fee award of one-third of the Gross Settlement Amount is denied.  However, a smaller upward departure is warranted, in light of the risks of the litigation, the motions practice early in the case, the number of hours spent on the litigation without a guarantee of compensation, and counsel's substantial experience in the field.

The Court awards a percentage-of-the-recovery award in the amount of 27% of the Gross Settlement Amount.  An award of $1,188,000, representing a 1.25 positive multiplier from the relevant lodestar, is reasonable in light of the relevant factors.

### 3.  Costs

29 U.S.C. § 216(b) allows an award of the "costs of the action."  Fed. R. Civ. P. 23(h) provides that the court may award "nontaxable costs that are authorized by law or by the parties' agreement."

Counsel represents that their total costs amount to of $35,555.37.  ECF No. 261 at 25.  Counsel limits their request for reimbursement of costs to $32,000.  *Id.* at 26.  $32,000 is the amount provided in the Settlement Agreement and the notice. ECF No. 252-1 at 34; ECF No. 268 at 10.  The Court has reviewed the statement of costs, ECF No. 261-1 at 36-39; ECF No. 261-2 at 13, and finds the requested award reasonable.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiff's Unopposed Motion for Final Approval of Class and Collective Action Settlement, **ECF No. 265**, is **GRANTED.**

2.    Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Costs, **ECF No. 261**, is **GRANTED in part.**

ORDER - 38

3.      The Court hereby **GRANTS FINAL APPROVAL** of the terms and conditions contained in the Settlement Agreement.

    a.  The Court finds the terms of the Settlement Agreement appear to be within the range of possible approval, pursuant to Federal Rule of Civil Procedure 23 and applicable law.

    b.  The Court finds the terms of the Settlement Agreement appear to be within the range of possible approval, pursuant to the Fair Labor Standards Act and applicable law.

4.      The Court hereby makes final its certification of the provisional Class, in accordance with the Settlement Agreement, for the purposes of this Settlement Agreement only.

5.      The Court **FINALLY APPROVES** an incentive award of **$15,000** for Plaintiff Myla Kurtz.

6.      The Court **FINALLY APPROVES** an award of attorney's fees of **$1,188,000** for Class Counsel.

7.      The Court **FINALLY APPROVES** Class Counsel's request for costs up to **$32,000**.

8.      The Court **FINALLY APPROVES** the appointment of Phoenix Settlement Administrators as Settlement Administrator and approves its reasonable administration costs of **$24,000**.

9.     The Court approves Working Washington and Legal Foundation of

Washington as the *cy pres* recipients in the event there are funds remaining.

10.     Accordingly, the Court hereby **APPROVES** the following

implementation schedule:

| | |
|---|---|
| Effective Date: | **August 23, 2024** |
| Deadline for Defendants to fund the Gross Settlement Amount by depositing the money with Phoenix: | **September 3, 2024** |
| Deadline for Phoenix to pay the Settlement Shares to Class and Collective Members; the Class Representative Service Payment to Plaintiff; Class Counsel's attorneys' fees and costs; and its own costs: | **September 13, 2024** |
| Check-cashing deadline: | **March 12, 2025** |
| Deadline for Phoenix to send reminders to Class and Collective Members who have not cashed their checks: | **January 11, 2025** |
| Deadline for Phoenix to redistribute funds from uncashed Settlement Share checks to those Class and Collective Members who cashed their Settlement Share checks or to the *cy pres* recipients, as applicable: | **March 12, 2025** |
| Deadline for Phoenix to provide a final report regarding the disbursements of all funds from the Gross Settlement Amount to counsel to all parties and the Court: | **10 days after final disbursement of all funds from the Gross Settlement Amount.** |

ORDER - 40

11.    The Court further **ORDERS** that, pending further order of this Court, all proceedings in the Action, except those contemplated herein and in the Settlement Agreement, are **STAYED**.

12.    With this final approval of the Settlement Agreement, **it is hereby ordered that all claims that are released as set forth in the Settlement Agreement are barred as of the Effective Date.**

13.    This case is **DISMISSED with prejudice** as to the Class and Collective Members.

14.    The Court permanently enjoins all of the Class and Collective Members from pursuing,[6] or seeking to reopen, any released claims against Defendants or any of the Released Parties as of the Effective Date as provided in the Settlement Agreement.

15.    The Court hereby **ENTERS JUDGMENT** consistent with the Settlement Agreement and this Order and so dismisses the action.

---

[6] To reiterate, the Court uses the terms "Class and Collective Members" to refer to individuals bound by the Settlement Agreement, subject to the Settlement Agreement and the Notice's provisions for opting out or requesting for exclusion. *See* ECF No. 252-1 at 40, 59.  These are Class Members that have not requested exclusion and Collective Members that have filed a consent form.

ORDER - 41

1        16.    The Court shall retain jurisdiction to enforce the terms of the

2    Settlement.

3        **IT IS SO ORDERED.**  The District Court Executive is directed to file this

4    order, provide copies to counsel, and **CLOSE** the file.

5        DATED August 23, 2024.

6                                  *s/Mary K. Dimke*

                                  MARY K. DIMKE

7                   UNITED STATES DISTRICT JUDGE

ORDER - 42